IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| PETRO FRANCHISE SYSTEMS, LLC, a Delaware Limited Liability Company, and TA OPERATING LLC, a Delaware Limited Liability Company, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Cause No.EP-08-CV-0387-KC |
| v. | ) ) | |
| ALL AMERICAN PROPERTIES, INC., a Pennsylvania Corporation, f/k/a All American Plazas, Inc., and THE CHELEDNIK FAMILY TRUST, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS PETRO FRANCHISE SYSTEMS, LLC's AND TA OPERATING LLC'S FIRST AMENDED COMPLAINT

Plaintiffs, Petro Franchise Systems, LLC and TA Operating LLC (collectively "Plaintiffs"), through their attorneys, file this Complaint against Defendants, All American Properties, Inc. ("AAP-PA") and The Chelednik Family Trust (the "Chelednik Trust") and state as follows:

## NATURE OF ACTION

1.     This action arises out of terminated franchise relationships governing the ownership and operation of travel centers.

2.     Plaintiffs originally brought this action against AAP-PA, All American Plazas, Inc. ("AAP-DE"), a Delaware corporation, and the Chelednik Trust seeking injunctive relief and money damages against two franchisees, AAP-PA and AAP-DE, whose franchises were

terminated because they materially breached the franchise agreements and their guaranties, but who nonetheless continued to operate travel centers under the Plaintiffs' trademarks and method of doing business. The Court granted Plaintiffs preliminary injunctive relief enjoining AAP-PA and AAP-DE from further use of Plaintiffs' trademarks. Since that time, AAP-DE filed for Chapter 11 bankruptcy protection and the Court severed Plaintiffs' causes of action against AAP-DE into a separate cause number and stayed that action. This action against AAP-PA and the Chelednik Trust continues.

3.     By continuing to operate after its franchise agreement terminated, AAP-PA violated the Lanham Act, the Texas Business & Commercial Code, and its franchise agreement, and caused irreparable injury to Plaintiffs.

4.     AAP-PA owes Plaintiffs substantial monies from past-due franchise fees, as well as from its unauthorized use of Plaintiffs' intellectual property. AAP-PA and the Chelednik Trust owe Plaintiffs substantial monies as guarantors of AAP-DE's obligations under AAP-DE's franchise agreement with Plaintiffs. In addition, AAP-PA owes Plaintiffs damages for its unauthorized use of Plaintiffs' intellectual property after the termination of the franchise agreement, for breach of the covenant not to compete, and for the value of services and goods received from Plaintiffs' after the termination of the franchise agreement.

5.     Accordingly, Plaintiffs seek permanent injunctive relief i) to prohibit AAP-PA from using Petro's name and trademarks (as well as marks that are confusingly similar thereto); ii) to compel AAP-PA to return Plaintiffs' proprietary materials; iii) to prevent AAP-PA from copying, distributing and/or publicly displaying Plaintiffs' copyrighted works; iv) to otherwise enforce the franchise agreement and its respective termination provisions; and v) to enjoin AAP-

2

PA from violating the covenant not to compete. In addition, Plaintiffs seek monetary damages for breach of contract, trademark infringement and unjust enrichment.

## JURISDICTION AND VENUE

6.     This action arises under the Lanham Act, 15 U.S.C. §1051 et. seq., and Texas statutory and common law. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1338 and 1367 and 15 U.S.C. §1221.

7.     This Court has personal jurisdiction over the defendants because defendants have consented to jurisdiction of the state and federal courts of the State of Texas for any controversies, disputes or questions arising out of the two franchise agreements and amendments thereto and certain related agreements between and among Plaintiffs and Defendants.

8.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c).

## THE PARTIES

**The Plaintiffs**

9.     TA Operating is a limited liability company formed under the laws of Delaware with a principal place of business at 24601 Center Ridge Road, Suite 200, Westlake, OH 44145. By virtue of a certain merger transaction and other agreements, TA Operating became the owner of Petro Stopping Center, LP's intellectual property on or about August 31, 2008 including, without limitation, the federally registered marks Petro®, Petro Stopping Center®, Petro Stopping Centers®, Petro Travel Plaza®, Petro:2®, and Iron Skillet®, as well as various other designs, logos and proprietary marks set forth more fully below, and the operating assets of the Petro franchise system.

3

10. Petro is a limited liability company formed and existing under the laws of the State of Delaware, with a principal place of business at 24601 Center Ridge Road, Suite 200, Westlake, OH 44145. Effective on or about August 31, 2008, Petro was assigned all of the rights and obligations of Petro Stopping Center, LP ("Petro Stopping") in the two franchise agreements at issue. Additionally, Petro, through a licensing agreement with TA Operating, has the right to sub-license to third parties, including the Defendants, the intellectual property associated with Petro franchise system and trademarks identified in this Amended Complaint.

**The Defendants**

11. AAP-PA, formerly known as All American Plazas, Inc., is a Pennsylvania corporation with a principal place of business at 1140 Avenue of the Americas, Suite 1800, New York, NY 10036. AAP-PA was the franchisee of the Petro franchise located at 167 Post House Road, Breezewood, PA 15533 (the "Breezewood Franchise"). Additionally, AAP-PA is a guarantor of AAP-DE's performance of its obligations under a franchise agreement for a franchised Petro location at PA Route 254 @ I-80 at exit 32, Milton, PA 17847 (the "Milton Franchise").

12. The Chelednik Trust is a trust which, on information and belief, exists pursuant to the laws of the State of New York. The Chelednik Trust, which maintains a place of business at 1140 Avenue of the Americas, Suite 1800, New York, NY 10036, is a guarantor of AAP-DE's performance of its obligations with respect to the Milton Franchise.

4

## BACKGROUND

**The Petro Franchise System**

13.  TA Operating and Petro, through their predecessor in interest Petro Stopping, have developed and operated a unique system (the "Franchise System") for the operation of full-facility truck/auto travel centers ("Travel Centers") comprised of fueling, merchandising, restaurant and preventative maintenance operations which are operated under the Petro® trademark and trade name.

14.  Distinguishing characteristics of the Franchise System include Petro's unique and distinctive interior and exterior layouts for facilities; standards and specifications for equipment; equipment layout; preventative maintenance facilities and services; uniforms; operating procedures for sanitation, maintenance, fueling, food processing and service and repair work; special marketing and sales techniques; methods and techniques for inventory and cost controls, record keeping and reporting, billing services, personnel management, purchasing and advertising; and other features that Petro authorizes its franchisees to use as part of its Franchise System.

15.  Petro grants franchises to individuals and businesses to use its Franchise System to operate Travel Centers. To this end, Petro sub-licenses to franchisees various trademarks and intellectual property owned by TA Operating and licensed to Petro, including the registered trademarks Petro® (U.S. Registration Nos. 1,615,532; 1,606,012; and 2,450,381; Canadian Registration No. TMA445761), Petro Stopping Center® (U.S. Registration Nos. 1,203,914; 1,424,435; and 1,610,830; Canadian Registration Nos. TMA445759; and TMA445760), Petro Stopping Centers® (U.S. Registration Nos. 1,670,519; and 1,689,774; Canadian Registration No.

5

TMA444440), Petro Travel Plaza® (U.S. Registration No. 1,505,318), Petro:2® (U.S. Registration No. 1,541,034; Canadian Registration No. TMA445088), Petro: Lube® (U.S. Registration No. 1,510,420), Iron Skillet® (U.S. Registration No. 1,620,580; 1,671,967; 1,137,057; 1,528,974; and 2,430,697 Canadian Registration No. TMA403161), Truckers Move Petro America® (U.S. Registration No. 1,819,876), The Driver's General Store® (U.S. Registration No. 1,948,444), Petro Mercantile Company® (U.S. Registration No. 1,957,384), Petro Pride® (U.S. Registration No. 1,414,551), Petro Pride Keeps You Movin!® (U.S. Registration No. 1,414,552), Fast Lane® (U.S. Registration No. 2,131,013), Petro Filling Station You'll Never Leave on Empty® (U.S. Registration No. 2,139,638), Iron Skillet America's Choice for Homestyle Cooking® (U.S. Registration No. 2,328,612), Lucky Jacks® (U.S. Registration Nos. 1,843,253; and 1,839,483), Petro Plus® (U.S. Registration No. 1,719,254), Petro Passport® (U.S. Registration No. 2,687,036), Petro Stop® (U.S. Registration No. 2,559,399), Quick! Skillet® (U.S. Registration No. 1,518,518; Canadian Registration No. TMA407046), The Choice of America's Drivers® (U.S. Registration No. 2,271,214), The Quality Difference® (U.S. Registration No. 2,510,995), The Open Road Never Looked So Good® (Canadian Registration No. TMA402524) and various other trademarks and intellectual property (collectively, Plaintiffs' aforementioned registered marks will be referred to as the "Petro Marks" or "Marks").

16.     Petro licenses to its franchisees the right to use the Petro Marks, as well as the right to use the Petro Franchise System utilizing Petro's copyrighted and proprietary signage, instruction and operating manuals, architectural plans and drawings, site selection guide, construction guide, business startup guide, marketing materials, computer software and programs, syllabi, videotapes, and other materials.

6

17.     Plaintiffs Petro and TA Operating are market leaders in franchised Travel Systems. Petro and TA Operating have invested significant time and money to develop their marks and business methods and operations, and enjoy substantial good will in them. Currently there are twenty-two franchised Petro locations throughout the United States.

18.     The customers of Petro are almost exclusively the traveling public, rather than local residents. The primary customer base for most Petro Travel Centers is long haul truckers.

19.     The Petro Travel Center concept is to provide a full service stopping point for truckers. Thus, Petro Travel Centers typically contain 8 to 12 diesel islands for fueling long haul trucks; 100 to 500 parking spaces for trucks; truck service and repair facilities; and a variety of amenities primarily intended for truckers, including showers, stores, quick and full service restaurants, laundry rooms, arcades and many similar driver services.

20.     Due to the nature of their customer market, most major travel centers, including Petro Travel Centers, are located on major interstate highways, often at the junction of multiple interstate highways. Locations where two major interstates intersect are unique and finite in number, and are particularly good sites for travel centers due to the high volume of truck traffic coming from a multitude of directions. The Breezewood location is an especially lucrative place for a travel center because it is situated at the junction of I-70 and the Pennsylvania Turnpike (I-76).

**The Breezewood Franchise Agreement**

21.     On or about October 23, 2003, Petro's predecessor in interest, Petro Stopping, and AAP-PA entered into a series of agreements including a Franchise Agreement; an Addendum thereto;

7

16544.00200/JECO/PLEA-1/1062911v1

a Pricing and Billing Program Agreement; a Security Agreement; and a Memorandum of Right of First Refusal and Right to Buy which authorized to AAP-PA to operate a Petro franchise location at 167 Post House Road, Breezewood, PA 15533. The Franchise Agreement and Addendum are attached in Exhibit 1 to Plaintiffs' Original Complaint and are collectively referred to as the "Breezewood Franchise Agreement."

22.    Pursuant to the terms of the Breezewood Franchise Agreement, AAP-PA obtained a ten-year nonexclusive franchise for the geographic area from the franchised location on I-76 West to the Ohio/Pennsylvania State Line, but not including west on I-70; from the franchise location on I-76 East to Exit 25 at I-476; and from the franchise location on I-70 South to Exit 26 at I-81. (See Exhibit B to Breezewood Franchise Agreement).

23.    Pursuant to the terms of the Breezewood Franchise Agreement, AAP-PA initially was required to pay franchise fee plus additional fees for the initial training costs, legal, design, merchandise and other related fees. Breezewood Franchise Agreement, §§ 4.1, 4.2, 4.3, 4.4.

24.    Additionally, AAP-PA was required to pay monthly royalty, advertising and other fees calculated pursuant to the formula set forth in Sections 4.5, 4.6 and 4.7 of the Breezewood Franchise Agreement.

25.    Pursuant to Section 4.6 of the Breezewood Franchise Agreement, AAP-PA was required to remit monthly payments and monthly statements to Petro by the 25th day of each month for sales made during the preceding calendar month.

8

26.     Pursuant to Section 4.6, if any payment became overdue, Defendant AAP-PA also was required to pay Plaintiff Petro interest on the overdue amount at the rate of 1.5% per month or the maximum rate permitted by law, whichever was less.

27.     The Breezewood Franchise Agreement contained detailed default and termination provisions set forth in Sections 15.1, 15.2, 15.3 and 15.4. Pursuant to those termination provisions, AAP-PA, as the Franchisee, had 30 days after its receipt from Petro of a written Notice of Termination within which to remedy any defaults under the Agreement and provide evidence of the cure to Petro. If a default was not cured within that time, the Breezewood Franchise Agreement terminated without further notice to the Franchisee upon the expiration of thirty-day period or any longer period required by applicable law. Failing to promptly pay monies due pursuant to the Franchise Agreement or provide financial or other information required by Petro constituted events of default.

28.     In the event of the termination of a franchise, the Breezewood Franchise Agreement required AAP-PA to immediately cease operating under the Franchise System and to cease using Plaintiffs' proprietary marks; take immediate steps to disassociate itself from these proprietary marks, including withdrawing all advertising, destroying all letterhead, completely covering all signage within 24 hours and removing said signs within 15 days unless otherwise instructed; promptly pay all fees due and owing to Petro; immediately return to Petro all manuals, records, files, instructions, correspondence, and promotional material or other documentary material using Plaintiffs' proprietary marks; return all other materials relating to the operation of the Franchise System, including any and all computer software programs relating to the franchised business in Franchisees' possession, and all copies thereof; cancel or transfer to Plaintiffs any

9

assumed names utilizing proprietary marks; and perform all other termination duties set forth in more detail in the Breezewood Franchise Agreement. (Breezewood Franchise Agreement, § 17.2).

29.     Furthermore, the Breezewood Franchise Agreement contained a covenant not to compete for a period of three years following the expiration or termination of the agreement. This provision prohibited AAP-PA from owning and operating any non-Petro branded travel center within the 100 miles of any Petro branded travel center or property on which Petro had an existing option to purchase or lease. (Breezewood Franchise Agreement, § 1.7, § 17.2(i)).

30.     In the Breezewood Franchise Agreement, AAP-PA expressly agreed that the scope, time and geographical restrictions of the covenant not to compete were reasonable. Specifically, Section 1.7(c) of the Breezewood Franchise Agreement stated:

> (c)     The parties recognize and agree that the scope, time and geographical restrictions contained herein (i) are reasonably and fairly related to the business operations and geographic coverage of Petro's business and are necessary to protect Petro's investment in its business, the Franchise System, and (ii) are in consideration of the special training and knowledge that Petro is providing to Franchisee and the value of this training and knowledge to the Franchise System and to Franchisee's operation of the Franchised Business.

31.     Additionally, Section 1.7 of the Breezewood Franchise Agreement acknowledged:  (1) that money damages are not an adequate remedy for a breach of the covenant not to compete; and (2) that Petro is entitled to seek an injunction without showing actual damages sustained by Petro.

32.     Section 1.7 also provided that Petro would be entitled to an award of liquidated damages in the amount of the profits derived by AAP-PA through any violation of the covenant not to compete. Specifically, Section 1.7(b) of the Breezewood Franchise Agreement stated:

10

(b)     The parties recognize and agree that if Franchisee breaches this Section 1.7, money damages are not an adequate remedy to Petro for the breach and, even if money damages were adequate, it would be impossible to accurately determine the damages sustained by Petro there from. Accordingly, if Franchisee breaches or threatens to breach this Section 1.7, Petro shall be entitled to seek an injunction restraining Franchisee from any breach, without showing or proving actual damage sustained by Petro.   Notwithstanding the foregoing and in addition therefore, to the extent that Franchisee obtains, directly or indirectly, any profit or personal benefit resulting from any violation of this Section 1.7, Franchisee shall be obligated to pay or deliver forthwith such profit or personal benefit to Franchisor as liquidated damages.

33.     Pursuant to Section 17.2(i) of the Petro Franchise Agreement, captioned "Franchisee's Obligations Upon Termination or Expiration," AAP-PA agreed to "comply with the covenants contained in Sections 1.7, 9, 10 and 11.1" of that agreement upon termination of the franchise, which included the covenant not to compete.

34.     Additionally, AAP-PA was contractually required to pay all damages, costs and expenses, including reasonable attorneys' fees, incurred by Petro subsequent to termination of the Breezewood Agreement to obtain injunctive relief for the enforcement of Section 17, including the restrictive covenants.  Specifically, Section 17.2(f) of the Breezewood Franchise Agreement stated:

(f)     Franchisee shall pay to Petro all damages, costs and expenses, including reasonable attorney's fees, incurred by Petro subsequent to the termination or expiration of the Franchise in obtaining injunctive or other relief for the enforcement of this Section 17.

35.     The Breezewood Franchise is located within 100 miles of one or more other Petro branded travel centers including, without limitation, locations in Carlisle, PA.

36.     Continuing to operate a travel center within 100 miles of another Petro location post-termination violates the covenant not to compete in the Breezewood Franchise Agreement.

11

**The Milton Franchise Agreement**

37.     On or about October 23, 2003, Petro's predecessor in interest, Petro Stopping, and AAP-PA entered into a series of agreements including a Franchise Agreement; an Addendum thereto; a Pricing and Billing Program Agreement; a Security Agreement; and a Memorandum of Right of First Refusal and Right to Buy which authorized AAP-PA to operate a Petro franchise location at PA Route 254 @ I-80 at Exit 32 in Milton, PA 17847. The Franchise Agreement and Addendum are attached in Exhibit 2 to Plaintiffs' Original Complaint and are collectively referred to as the "Milton Franchise Agreement."

38.     Pursuant to the terms of the Milton Franchise Agreement, AAP-PA obtained a ten-year nonexclusive franchise for the geographic area from the franchised location on I-80 West to the Ohio State Line, from the franchised location on I-80 East to the intersections of I-80 and I-476; from the Franchised Location on U.S. Highway 15 and/or I-180 North to the New York State line; and from the franchised location on U.S. Highway 15 South to the intersection of Interstate 81 and U.S. Highway 322. (Exhibit B to Milton Franchise Agreement).

39.     Pursuant to the terms of the Milton Franchise Agreement, AAP-PA initially was required to pay franchise fee plus additional fees for the initial training costs, legal, design, merchandise and other related fees. (Milton Franchise Agreement, §§ 4.1, 4.2, 4.3, 4.4.)

40.     Additionally, AAP-PA was required to pay monthly royalty fees, and advertising and other fees calculated pursuant to the formula set forth in Sections 4.5, 4.6 and 4.7 of the Milton Franchise Agreement.

12

41. Pursuant to Section 4.6 of the Milton Franchise Agreement, Defendant AAP-PA was required to remit monthly payments and monthly statements to Petro by the 25th day of each month for sales made during the preceding calendar month.

42. Pursuant to Section 4.6, if any payment became overdue, Defendant AAP-PA also was required to pay Plaintiff Petro interest at the rate of 1.5% per month or the maximum rate permitted by law, whichever was less.

43. By virtue of an Assignment and Assumption Agreement dated December 6, 2007 ("Assignment Agreement"), AAP-PA assigned, and AAP-DE assumed, all of AAP-PA's obligations under the Milton Franchise Agreement. A true and accurate copy of this Assignment and Assumption Agreement is attached as Exhibit 3 to Plaintiffs' Original Complaint.

44. Pursuant to the Assignment and Assumption Agreement, AAP-PA agreed to remain bound and liable for the full and faithful performance of AAP-DE's obligations and duties under the Milton Franchise Agreement and all agreements ancillary to the Franchise Agreement (including, but not limited to, any Billing Program Agreement, the Security Agreement, and the Memorandum of Right of First Refusal and Option to Purchase). (See Assignment Agreement, ¶ 5).

45. The Milton Franchise Agreement contained detailed default and termination provisions set forth in Sections 15.1, 15.2, 15.3 and 15.4. Pursuant to those termination provisions, AAP-DE, as the Franchisee, had 30 days after its receipt from Petro of a written Notice of Termination within which to remedy any defaults under the Agreement and provide evidence of the cure to Petro. If a default was not cured within that time, the Milton Franchise Agreement terminated without further notice to the franchisee upon the expiration of thirty day period or any longer

13

period required by applicable law. Failing to promptly pay monies due pursuant to the Franchise Agreement or to provide financial or other information required by Petro constituted a default.

46.     In the event of the termination of a franchise, the Milton Franchise Agreement required AAP-DE to immediately cease operating under the Franchise System and to cease using Plaintiffs' proprietary marks; take immediate steps to disassociate itself from these marks, including withdrawing all advertising, destroying all letterhead, completely covering all signage within 24 hours and removing said signs within 15 days unless otherwise instructed; promptly pay all fees due and owing to Petro; immediately return to Petro all manuals, records, files, instructions, correspondence, and promotional material or other documentary material using Plaintiffs' proprietary marks; return all other materials relating to the operation of the Franchise System, including any and all computer software programs relating to the franchised business in Franchisees' possession, and all copies thereof; cancel or transfer to Plaintiffs any assumed names utilizing proprietary marks; and perform all other termination duties set forth in more detail in the Milton Franchise Agreement. (Milton Franchise Agreement, § 17.2).

47.     Additionally, the Milton Franchise Agreement required the Franchisee to reimburse all costs of collection including attorneys fees incurred to collect any sums due pursuant to the Milton Franchise Agreement and/or to otherwise enforce the Franchisor's rights. (Milton Franchise Agreement, § 23.11).

48.     Furthermore, the Milton Franchise Agreement contained a covenant not to compete for a period of three years following the expiration or termination of the Franchise Agreement. This provision prohibited AAP-DE from owning and operating any non-Petro branded travel center within the 100 miles of any Petro branded travel center or property on which Petro had an

14

existing option to purchase or lease unless AAP-DE obtained Petro's express written consent. (Milton Franchise Agreement, § 1.7, § 17.2(i)).

49.     The Milton Franchise is located within 100 miles of one or more other Petro branded travel centers including, without limitation, locations in Carlisle, PA and Scranton, PA.

50.     Continuing to operate a travel center within 100 miles of other Petro locations post-termination constituted a violation of the covenant not to compete in the Milton Franchise Agreement.

51.     On November 29, 2007, The Chelednik Trust executed a Guaranty Agreement pursuant to which the Chelednik Trust unconditionally guaranteed to Petro Stopping and its successors and assigns, the performance by AAP-DE of its obligations under the Milton Franchise Agreement including, but not limited to, the full and punctual payments of any fees and sums due to Petro, together with all attorneys fees and collection costs pursuant or relating to the enforcement of the Guaranty Agreement or the Milton Franchise Agreement.  (See Guaranty attached as Exhibit A to the Assignment and Assumption Agreement, ¶ 1, Exhibit 3 to Plaintiffs' Original Complaint).

**The Previous Defaults Of The Franchisees On The Milton and Breezewood Franchise Agreements**

52.     On January 28, 2008 Petro's predecessor in interest sent notices of default to AAP-PA and AAP-DE regarding their respective payment defaults on the Breezewood and Milton Franchise Agreements.  Subsequently, the two Franchise Agreements were terminated effective March 1, 2008.

15

53.     Thereafter, pursuant to a certain Confidential Settlement Agreement and Mutual General Release, the Breezewood and Milton Franchises were reinstated and AAP-PA and AAP-DE agreed, among other things, to prepay $70,000.00 in franchise fees for the Milton and Breezewood franchises.

54.     The $70,000.00 in prepaid fees have been applied against royalty and advertising fees due from the Milton and Breezewood Franchisees as of March 25 and April 25, 2008, respectively.  Since the application of the prepaid franchise fees, neither AAP-PA nor AAP-DE remitted all of the payments due under their respective franchise agreements.

55.     Subsequent thereto, Petro, through its predecessors in interest, provided various notices of default to AAP-PA and AAP-DE respectively.  (See e.g. Exhibits 4, 5, 6, 7 to Plaintiffs' Original Complaint).

**Termination of the Franchise Agreement**

56.     By automatic operation of the terms of the Milton Franchise Agreement, the Milton Franchise terminated on August 29, 2008.  (See Exhibit 8 to Plaintiffs' Original Complaint).

57.     By automatic operation of the Breezewood Franchise Agreement, the Breezewood Franchise terminated on August 29, 2008.  (See Exhibit 9 to Plaintiffs' Original Complaint).

58.     By correspondence dated September 2, 2008, Petro confirmed the termination of the two franchises and requested AAP-PA's and AAP-DE's confirmation on or before September 9, 2008 that AAP-PA and AAP-DE had commenced steps to implement their post termination obligations including, without limitation, de-identifying themselves from the Petro Franchise. (See Exhibits 8 and 9 to Plaintiffs' Original Complaint).

16

59.     No confirmation was received that AAP-PA and AAP-DE had commenced steps necessary and required pursuant to their respective franchise agreements to de-identify the locations as Petro franchisees and to otherwise comply with the termination provisions of the Franchise Agreements.

60.     AAP-PA owes in excess of $140,000.00 under the Breezewood Franchise Agreement Plaintiffs.

61.     AAP-PA and the Chelednik Trust, also owe the amount owed by AAP-DE under the Milton Franchise Agreement to Plaintiffs.

62.     AAP-PA continued to use Plaintiffs' proprietary trademarks and copyrighted material in the operation of its travel center at the location where it was formerly authorized to operate a Petro franchised travel center. In so doing AAP-PA violated its Franchise Agreement with Petro, the Lanham Act and other law.

63.     Following the termination of the Breezewood Franchise Agreement, AAP-PA continued to hold itself out and continued to operate as a Petro franchised travel center. As a result, AAP-PA continued to receive the benefit of goods and services from Plaintiffs but failed and refused to pay Plaintiffs the value of those goods and services.

64.     On March 23, 2009, this Court granted Plaintiffs preliminary injunctive relief enjoining AAP-PA and AAP-DE from further use of Plaintiffs' trademarks.

**Breach of the Non-Compete Covenant**

65.     Approximately two weeks after entry of the injunction, AAP-PA took down its "Petro Stopping Center" signage. However, in spite of the covenant not to compete in the Breezewood

17

Franchise Agreement, AAP-PA immediately converted the former Breezewood Franchise to a Pilot Travel Center and continued its operations.

66.    On April 27, 2009, Petro wrote to AAP-PA, reminding it of AAP-PA's obligation under the covenant not to compete and notifying it that AAP-PA's operation of the Breezewood travel center as a Pilot Travel Center violates that obligation.

67.    AAP-PA ignored its obligations under the covenant not to compete and continues to operate its former Breezewood travel center as a Pilot Travel Center.

68.    By operating the former Breezewood travel center as a Pilot Travel Center, AAP-PA is violating the covenant not to compete.

69.    Petro's travel center system includes a variety of proprietary systems, procedures and programs that were designed to maximize Petro's appeal to long haul truckers and establish a loyal base of repeat customers. AAP-PA's managers and employees participated in Petro's training and operations programs and consequently are familiar with Petro's proprietary operational systems and marketing and operations policies.

70.    As set forth in Section 1.7(c) of the covenant not to complete in the Breezewood Franchise Agreement, Petro provided this special training and knowledge to AAP-PA in exchange for AAP-PA's agreement to the covenant not to compete.

71.    On information and belief, AAP-PA and/or Pilot are using this special training and knowledge in operating the Pilot Travel Center in Breezewood, including without limitation, its truck service bays that were operated under the "Petro:Lube" franchise.

18

72.    Diesel fuel sales account for approximately 85 to 90 percent of the revenue of the average Petro Travel Center. In the industry, it is common knowledge that Petro and Pilot travel centers typically negotiate special pricing arrangements with fuel suppliers due to the volume of their fuel purchases. Because of their higher volumes and generally lower fuel purchasing costs, Petro locations generally can offer lower prices to major fleet customers as compared to their unaffiliated competitors.

73.    Travel centers that are affiliated with one of the major fuel re-sellers, like Petro or Pilot, have a competitive advantage over their unaffiliated competitors because the fleet programs give their respective travel centers access to a large base of repeat customers who purchase high volumes of fuel. As a result, fleet customers generally do business with Petro, Pilot and other national travel center chains.

74.    Since Pilot has licensed AAP-PA to operate a Pilot Travel Center at AAP-PA's former Breezewood Franchise, Pilot undoubtedly is offering its own fleet discount programs to its fleet customers which makes it more difficult for Petro to open a replacement location in the area.

75.    Once customers become accustomed to using a particular travel center location and its amenities, they will frequently plan their travel to use that particular travel center in the future. Thus, customers of a particular travel center often will continue to use a travel center by habit, at least for a period of time, even if it is not affiliated with a national travel center network unless there is a financial reason not to do so. If AAP-PA's Breezewood location was not operating or did not have access to fleet pricing programs, customers would have a significant financial reason to frequent Petro's other area locations instead.

76. By continuing to operate the travel center in Breezewood as a Pilot Travel Center, AAP-PA is improperly taking advantage of the good will and loyal customer base that Petro and its Petro's predecessor, Petro Stopping, built over the course of the travel center's ten-year history as a Petro franchise.

77. As a result of AAP-PA's continued operations and failure to comply with the covenant not to compete, customers that would otherwise patronize Petro's other area locations are using Pilot and AAP-PA's Pilot Travel Center.

78. As noted above, the junction of multiple interstate highways are particularly good sites for travel centers due to the high volume of truck traffic. Breezewood is an example of such siting, since it is an interchange of I-70 and I-76, the Pennsylvania Turnpike.

79. Because long haul truckers often will travel hundreds of miles between stops, Petro's franchise territories are large and often extend 100 or more miles in one or more directions. For example, AAP-PA's franchise territory for its former Breezewood Franchise covered most of I-76, running from Breezewood west on I-76 to the Ohio/Pennsylvania State Line, but not including west on I-70; from Breezewood east on I-76 to former Exit 25 (now Exit 333) at I-476 in the Philadelphia suburbs; and from Breezewood south on I-70 South to Exit 26 at I-81 in Hagerstown, Maryland.

80. There are a restricted number of locations in Breezewood and the surrounding area that, for zoning and other reasons, are appropriate for operation of a truck travel center, as well as a limited amount of consumer demand in the area.

20

81.     Where, like in Breezewood, there are already two truck travel centers (AAP-PA's and a Travel Centers of America location), it becomes significantly more difficult for Petro to enter the market against entrenched competitors in the area. Additionally, AAP-PA and Pilot's operation of the former Breezewood Franchise as a Pilot Travel Center makes it more difficult for Petro to obtain a new franchisee for the area because of the high costs of constructing a new travel center and relatively low margins.

82.     As a result of the barriers to entry into this industry and the time required to open a new travel center, AAP-PA's continued operation of its existing travel center, particularly as a name brand facility, will make it difficult, if not impossible, for Petro to open a new Petro location within many miles of the intersection of I-70 and I-76.

83.     As a result of the foregoing, Plaintiffs have been injured and have suffered damages.

## FIRST CLAIM FOR RELIEF
### (Infringement of Plaintiffs' Registered Marks in Violation of Section 32(1)of the Lanham Act, 15 U.S.C. §1114(1))

84.     Plaintiffs repeat and reallege the preceding paragraphs as though set forth fully herein.

85.     As set forth more fully above, Plaintiffs own and/or have licensed federally registered trademarks including Petro®, Petro Stopping Center®, Petro Stopping Centers®, Petro Travel Plaza®, Petro: 2®, Iron Skillet® and various other trademarks for use in conjunction with the Petro Travel Centers franchises.

86.     AAP-PA has used the aforesaid Petro Marks without Plaintiffs' permission or authority.

87.     AAP-PA's activities are likely to lead to and result in consumer confusion, mistake or deception, and are likely to cause consumers to believe that Plaintiffs are the source of, or have

authorized, licensed or are otherwise connected with AAP-PA's travel center, all to Plaintiffs' detriment.

88.     Upon information and belief, AAP-PA's actions are deliberate and intended to confuse the public as to the affiliation of AAP-PA's travel center and to injure Plaintiffs and reap the benefit of Plaintiffs' goodwill associated with the aforesaid federally registered trademarks.

89.     AAP-PA's actions violate Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

90.     As a direct and proximate result of AAP-PA's willful conduct, Plaintiffs have sustained and will continue to sustain substantial damages.

91.     Furthermore, as a result of AAP-PA's conduct described above, Plaintiffs have sustained and will continue to sustain irreparable injury for which no adequate remedy at law exists.

## SECOND CLAIM FOR RELIEF
### (False Designation of Origin of AAP-PA's Goods and Services in Violation of 15 U.S.C. §1125(a), Lanham Act Section 43(a))

92.     Plaintiffs repeat and reallege the preceding paragraphs as though set forth fully herein.

93.     Plaintiffs' marks are inherently distinctive when used in conjunction with a travel center.

94.     Plaintiffs' marks are distinctive when used in connection with Plaintiffs' Travel Centers by virtue of the substantially exclusive and extensive use of the marks in commerce by Plaintiffs.

95.     AAP-PA's adoption and use of the aforesaid marks for a travel center and/or its failure to de-identify its travel center from Petro constitute a false designation of origin and a false representation that the travel centers are sponsored, authorized, affiliated, licensed and/or franchised by or are otherwise connected or affiliated with Plaintiffs, or come from the same

22

source as Plaintiffs' goods and services and are of the same quality as that assured by Plaintiffs' marks.

96.    AAP-PA's use of the marks is without Plaintiffs' permission or authority.

97.    Upon information and belief, AAP-PA's acts are deliberate and are intended to confuse consumers and the public as to the source and affiliation of AAP-PA's Travel Center and to injure Plaintiffs and reap the benefit of Plaintiffs' goodwill associated with their trademarks.

98.    AAP-PA's acts violate Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

99.    As a direct and proximate result of AAP-PA's willful conduct, Plaintiffs have sustained and will continue to sustain substantial damages.

100.    Furthermore, as a result of AAP-PA's conduct described above, Plaintiffs have sustained and will continue to sustain irreparable injury for which there is no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
**(Dilution of Plaintiffs' Trademark in Violation of 15 U.S.C. §1125(c), Lanham Act Section 43(c))**

101.    Plaintiffs repeat and reallege the preceding paragraphs as though set forth fully herein.

102.    Plaintiffs Petro®, Petro Stopping Centers®, Petro Travel Plaza®, Petro: 2®, Iron Skillet® and other trademarks set forth above are famous marks within the meaning of the Lanham Act Section 43(c), 15 U.S.C. §1125(c).

103.    AAP-PA's acts described above have diluted and continue to dilute the distinctiveness of Plaintiffs' unique and inherently distinctive trademarks.

23

104.    These actions violate Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c), and have injured and will continue to injure Plaintiffs unless restrained, thereby causing damage to Plaintiffs in an amount to be determined at trial, as well as irreparable injury to Plaintiffs' goodwill and reputation associated with the value of the aforesaid trademarks.

105.    Upon information and belief, AAP-PA acted knowingly and deliberately with the intent to dilute Plaintiffs' trademarks.

106.    AAP-PA's conduct is willful, wanton and egregious.

107.    Plaintiffs have no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
### (Common Law Unfair Competition and Unjust Enrichment)

108.    Plaintiffs repeat and reallege the preceding paragraphs as though set forth fully herein.

109.    Plaintiffs own and enjoy common law trademark rights in their trademarks set forth above in this Complaint throughout the United States and in the State of Texas based on their prior and extensive use of such trademarks in commerce.

110.    Plaintiffs' rights in their trademarks are superior to any rights AAP-PA may claim in and to the trademarks for any purpose, especially the commercial exploitation of those trademarks in connection with travel centers.

111.    AAP-PA's unlawful acts in appropriating rights in Plaintiffs' common law trademarks were intended to capitalize on Plaintiffs' goodwill for AAP-PA's own pecuniary gain.

24

112.   AAP-PA's unlawful misuse of Plaintiffs' trademarks are likely to cause the AAP-PA's Travel Center to be passed off as and confused with Plaintiffs' properly authorized and franchised travel centers, all to the detriment of Plaintiffs.

113.   AAP-PA continued to use and/or simulate Plaintiffs' trademarks for the purpose of deceiving the public and in order to induce the public to patronize AAP-PA's travel center and to believe that it was duly authorized and affiliated with Plaintiffs' trademarks and franchised travel centers.   Since the date of termination of the Breezewood Franchise Agreement, AAP-PA received many benefits for which it did not pay Plaintiffs for their use and enjoyment.

114.   AAP-PA's actions are willful, wanton and egregious.

115.   Plaintiffs and/or their predecessors-in-interest have expended substantial time, resources and effort to create and maintain the extensive goodwill enjoyed by their trademarks.

116.   As a result of Plaintiffs' efforts, AAP-PA is likely to be unjustly enriched and benefit from property rights which rightfully belong to Plaintiffs.

117.   AAP-PA has benefited and been unjustly enriched after the termination of the Breezewood franchise.

118.   AAP-PA's acts constitute unfair competition and unjust enrichment under Texas common law.

119.   As a direct and proximate result of AAP-PA's willful conduct, Plaintiffs have sustained and will continue to sustain substantial damages.

25

120.    Further, as a result of AAP-PA's conduct described above, Plaintiffs have sustained and will sustain irreparable injury for which there is no adequate remedy at law.

121.    AAP-PA entered into a franchise agreement to operate a Petro location in Breezewood, utilizing the specialized training, methods, marketing and operations policies and programs, and proprietary franchise systems, that were licensed to it under the Petro Franchise Agreement.

122.    Despite no longer being a franchisee, AAP-PA continued to utilize and benefit from the aforesaid specialized training, methods, policies, programs and franchise systems, that were previously licensed to it by Petro.

123.    By acting in contravention of the covenant not to compete, which was a crucial component of the franchising relationship and was given in consideration of and to induce Plaintiffs to disclose its proprietary business methods and information, AAP-PA is being unjustly enriched.

124.    As a direct and proximate result of AAP-PA's willful conduct, Plaintiffs have sustained and will continue to sustain substantial damages.

125.    Further, as a result of AAP-PA's conduct described above, Plaintiffs have sustained and will sustain irreparable injury for which there is no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
### (Trademark Infringement in Violation of Tex. Bus. & Com. Code §16.29)

126.    Plaintiffs repeat and reallege the preceding paragraphs as though set forth fully herein.

127.    AAP-PA's operation of a travel center at the former Breezewood Franchise location using Plaintiffs' trademarks including, without limitation, Petro®, Petro Stopping Centers®,

16544.00200/JECO/PLEA-1/1062911v1

Petro Travel Plaza®, Petro: 2®, and/or Iron Skillet®, without Plaintiffs' authorization is likely to injure Plaintiffs' business reputation.

128. AAP-PA's operation of a travel center at the former Breezewood Franchise location using the Petro trademarks without authorization or authority is likely to dilute the distinctive quality of Plaintiffs' registered marks and trademarks and trade names which are valid at common law.

129. Plaintiffs' federally registered trademarks are distinctive marks in which Plaintiffs have developed substantial goodwill and a unique product identity.

130. As a result of the foregoing, Plaintiffs have sustained and will continue to sustain substantial damages.

131. Further as a result of AAP-PA's conduct described above, Plaintiffs have sustained and will continue to sustain irreparable injury for which there is no adequate remedy at law.

132. AAP-PA's actions violate Tex. Bus. & Com. Code §16.29.

### SIXTH CLAIM FOR RELIEF
### (Breach of Contract - Plaintiffs vs. AAP-PA)

133. Plaintiffs repeat and reallege the preceding paragraphs as though set forth fully herein.

134. As set forth more fully above, Plaintiffs, by and through their predecessor, entered into the Breezewood Franchise Agreement with AAP-PA on or about October 23, 2003.

135. By failing to pay franchise and other fees due pursuant to the Breezewood Franchise Agreement, AAP-PA has breached its contractual relationships with Petro and TA Operating.

27

136. By failing de-identify its travel center from Petro, violating the non-compete clause in the Breezewood Franchise Agreement and otherwise failing to comply with the Breezewood Franchise Agreement, Defendant AAP-PA has breached its contractual obligations owed to Plaintiffs.

137. As a result of the foregoing, Plaintiffs have suffered and continue to suffer monetary damages as well as irreparable injuries for which they have no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Contract - Covenant Not to Compete - Plaintiffs vs. AAP-PA)

138. Plaintiffs repeat and reallege the preceding paragraphs as though set forth fully herein.

139. As set forth more fully above, Plaintiffs, by and through its predecessor, entered into the Petro Franchise Agreement with AAP-PA on or about October 23, 2003.

140. By operating a Pilot-branded diesel fuel servicing center at AAP-PA's Breezewood location despite Plaintiffs' objections thereto and by operating a travel center, AAP-PA has breached the covenant not to compete.

141. As a result of the foregoing, Plaintiffs have suffered and continue to suffer monetary damages as well as irreparable injuries for which it has no adequate remedy at law.

## EIGHTH CLAIM FOR RELIEF

### (Breach of Contract - Petro vs. The Chelednik Family Trust)(Guaranty Agreement)

142. Plaintiffs repeat and reallege the preceding paragraphs as though set forth fully herein.

28

143. On or about November 29, 2007, the Chelednik Trust contractually agreed to guarantee the performance of AAP-DE with respect to the Milton Franchise Agreement by executing a Guaranty Agreement ("Chelednik Guaranty").

144. Pursuant to the Chelednik Guaranty, the Chelednik Trust agreed to pay on demand all costs, expenses and fees (including without limitation reasonable attorney's fees) incurred by Petro in making collection pursuant to or in enforcement of the aforesaid Guaranty, the Milton Franchise Agreement.

145. Plaintiff Petro has demanded that the Chelednik Trust pay all sums due and owing from AAP-DE, but the Chelednik Trust has failed to do so.

146. By virtue of its failure to pay the sums overdue from AAP-DE, the Chelednik Trust has breached its Guaranty Agreement.

147. As a result of the aforesaid, Plaintiff Petro has sustained monetary damages plus interest, attorney's fees and costs of collection.

### NINTH CLAIM FOR RELIEF
#### (Breach of Contract - Petro vs. AAP-PA)(Guaranty Agreement)

148. Plaintiffs repeat and reallege the preceding paragraphs as though set forth fully herein.

149. By virtue of the Assignment and Assumption Agreement dated December 6, 2007, AAP-PA remains bound by and liable for the full and faithful performance of all of AAP-DE's obligations and duties under the Milton Franchise Agreement and all agreements ancillary to the Milton Franchise Agreement (including, but not limited to, any Billing Program Agreement, the Security Agreement, and the Memorandum of Right of First Refusal and Option to Purchase).

29

150. By its express terms, the Assignment and Assumption Agreement dated December 6, 2007 did not release AAP-PA from any of its obligations to Petro, TA Operating and/or their predecessors in interest.

151. As such, AAP-PA remains a guarantor of all of AAP-DE's obligations and responsibilities under the Franchise Agreement including, without limitation, the obligation to pay all payments due under the Milton Franchise Agreement if AAP-DE fails to pay them in a timely fashion.

152. As such, AAP-PA is responsible for all sums which are currently due and owing from AAP-DE plus interests, attorney's fees and costs of suit.

153. Moreover, AAP-PA has guaranteed all costs associated with AAP-DE's obligations to de-image the Milton Petro location as a result of the termination of the Franchise Agreement and is responsible for any and all costs incurred by Plaintiffs in enforcing their rights under the Milton Franchise Agreement including, without limitation, any costs that Plaintiffs may incur in removing signage and otherwise de-branding the Milton Franchise location.

154. Although AAP-PA has been placed on notice that AAP-DE is in default of its obligations under the Milton Franchise Agreement and has been terminated, AAP-PA has failed to remit the sums due and owing.

155. By virtue of its failure to pay the sums due and owing from AAP-DE, AAP-PA has breached its guaranty obligations.

156. As a result of the aforesaid, Plaintiff Petro has sustained monetary damages plus interest, attorney's fees and cost of collection.

16544.00200/JECO/PLEA-1/1062911v1

## TENTH CLAIM FOR RELIEF
### Conversion

157.    Plaintiffs repeat and reallege the preceding paragraphs as though set forth fully herein.

158.    Plaintiffs would show that AAP-PA's failure to return Plaintiffs' proprietary materials, including, but not limited to: advertising materials, letterhead, signage, manuals, records, files, instructions, correspondence, promotional materials, other documentary materials using Plaintiffs' proprietary marks, computer software programs and other similar items associated with Plaintiffs' constituted conversion of Plaintiffs' property under Texas common law.

159.    Plaintiffs would show AAP-PA has wrongfully exercised dominion or control over the Plaintiffs' property,

160.    As a direct and proximate result of AAP-PA's conduct, Plaintiffs have sustained and will continue to sustain substantial damages.

161.    AAP-PA acted with malice, thus entitling Plaintiffs to exemplary damages.

## ELEVENTH CLAIM FOR RELIEF
### (Unjust Enrichment - AAP-PA)

162.    Plaintiffs repeat and reallege the preceding paragraphs as though set forth fully herein.

163.    Following the termination of the Breezewood Franchise Agreement, AAP-PA received the benefit of goods and services provided by Plaintiffs, but failed and refused to pay Plaintiffs for the value of those goods and services resulting in the unjust enrichment of AAP-PA. These acts constitute unjust enrichment and as a direct and proximate result thereof, Plaintiffs have sustained substantial damages.

31

WHEREFORE, with a preliminary injunction having been entered by the Court, Plaintiffs pray for judgment against Defendants as follows:

(a)   A permanent injunction prohibiting and enjoining AAP-PA, its officers, directors, agents, employees, subsidiaries, affiliates, assigns, licensees and any one acting in concert with it:

   (i)   from using any of the trademarks owned and/or licensed by Plaintiffs, or any marks confusingly similar thereto;

   (ii)   from otherwise infringing on Plaintiffs' trademarks;

   (iii)   from otherwise diluting Plaintiffs' trademarks; and

   (iv)   from otherwise unfairly competing with Plaintiffs.

(b)   A permanent injunction prohibiting and enjoining AAP-PA, its officers, directors, agents, employees, subsidiaries, affiliates, assigns, licensees and anyone acting in concert with it:

   (i)   from violating the covenant not to compete in the Breezewood Franchise Agreement;

   (ii)   requiring AAP-PA to cease operations of the Breezewood travel center in accordance with the provisions of the Breezewood Franchise Agreement and to terminate any contractual agreements between it and Pilot relating to the Breezewood travel center; and

   (iii)   prohibiting AAP-PA from operating any fuel service operations at the former Breezewood Petro location without the express written permission of Plaintiff for a period of three years from the date of the order and requiring AAP-PA to account for and pay over to Plaintiff all gains, profits and advantages from AAP-PA's operation of the Pilot travel Center at the location of the former Breezewood Petro franchise;

(c)   Ordering AAP-PA to deliver to Plaintiffs all brochures, manuals, software, marketing and promotional materials, signage of any kind bearing any of Plaintiffs' trademarks pursuant to 15 U.S.C. §1118;

(d)   Requiring AAP-PA to account for and pay over to Plaintiffs all gains, profits and advantages derived from its wrongful use of Plaintiffs' trademarks since the termination of its franchise on August 29, 2008;

(e)   Awarding compensatory damages in an amount to be determined at trial;

(f)   Awarding punitive damages;

16544.00200/JECO/PLEA-1/1062911v1

(g)     Awarding treble damages pursuant to 15 U.S.C. §1117;

(h)     Awarding damages for all amounts owed under the Breezewood Franchise Agreement;

(i)     Awarding damages for all amounts owed under the Milton Franchise Agreement;

(j)     Awarding damages for AAP-PA's trademark infringement;

(k)     Awarding damages for AAP-PA's breach of the covenant not to compete;

(l)     Awarding damages for AAP-AP's unjust enrichment following termination of the franchise agreement for the value of goods and services subsequently received by AAP-PA;

(m)     Awarding attorneys fees, and pre and past judgment interest; and

(n)     Awarding costs, disbursement and attorney's fees pursuant to 15 U.S.C. §1117; and awarding such other costs as the Court deems just and proper.

                    Respectfully submitted,

                    KEMP SMITH LLP
                    221 N. Kansas, Suite 1700
                    El Paso, Texas  79901
                    915.533.4424
                    915.546.5360 (FAX)


            By:     _____
                    MARK N. OSBORN
                    State Bar No. 15326700
                    JEANNE C. COLLINS
                    State Bar No. 04611750
                    Attorneys for Petro Franchise Systems LLC and
                    TA Operating LLC

16544.00200/JECO/PLEA-1/1062911v1

## CERTIFICATE OF SERVICE

I certify that on this 9th day of October, 2009, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing via electronic mail to counsel for Defendants, Joseph L. Hood, Jr., 201 E. Main, Suite 1320, El Paso, Texas 79901.

MARK N. OSBORN

16544.00200/JECO/PLEA-1/1062911v1